# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

**JEFFERY JOHNSON**                                                    **PLAINTIFF**

**v.**                                         **CIVIL ACTION NO. 3:21-cv-725-BJB**

**ARAMARK CORPORATION et al.**                                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeffery Johnson filed a *pro se*, *in forma pauperis* 42 U.S.C. § 1983 complaint along with numerous exhibits.  This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the reasons set forth below, the Court will dismiss some claims and allow others to proceed.

### I. STATEMENT OF CLAIMS

Plaintiff, an inmate at the Kentucky State Reformatory (KSR), names as Defendants the Aramark Corporation, the food provider for KSR, and in their official and individual capacities Martha Dilmaghani, Aramark's lead kitchen supervisor; Warden Anna Valentine; the Department of Corrections (DOC) Commissioner Cookie Crews; and John Doe #1, an Aramark dietician.  His claims concern being kept in "CPTU"[1] and his diabetic diet.

Plaintiff alleges that on May 3, 2021, he was locked in CPTU by Defendant Valentine in retaliation "for investigation of gang activity[.]"  He states that this occurred after a staff member told him that he knew that Plaintiff was not in a gang for purposes of five other lawsuits filed by Plaintiff.  He also states that "this violates my 4th Amendment right[.]"  Plaintiff alleges that while in CPTU Defendant Dilmaghani "refused" him his "diabetic diet medical meals making

---

[1] Presumably the Corrections Psychiatric Treatment Unit.  *See Carpenter v. Strough*, No. 3:20-CV-179-BJB, 2021 WL 5625406, at *1 (W.D. Ky. Nov. 30, 2021).

me very sick and hypoglycemic for months." He states that he lost approximately fifty pounds "causing excessive risk to my health and saf[e]ty."

Plaintiff further alleges that on September 10, 2021, Defendants Dilmaghani and Aramark "forced" him to "eat pancakes and syrup," which "can kill a diabetic." According to the complaint, Defendants Valentine and Crews showed tacit approval, thereby violating Corrections Policies and Procedures (CPP).

Plaintiff next states that on September 29, 2021, he was "forced" to eat gravy and biscuits, for which Defendants Valentine and Crews again showed tacit approval. He also alleges that he is forced to eat 56 pieces of white bread per week on his "medical diabetic diet tray"—although he asserts diabetics are only supposed to eat wheat bread. Among the attachments to the complaint is a statement from Defendant Dilmaghani that Aramark's approved diet calls for two slices of white bread with each meal.

Plaintiff also alleges that on November 5, 2021, he was again locked in CPTU by Defendant Valentine in retaliation for filing a lawsuit regarding his medical care. Plaintiff alleges that he was kept in CPTU for ten days and that Defendants Dilmaghani and Aramark refused him his diabetic diet. He also asserts that Defendant Valentine further retaliated against him by placing him on "grievance restriction" (presumably a limitation on filing more grievances, though Plaintiff doesn't specify) in response to grievances Plaintiff filed against Defendants Dilmaghani and Aramark.

Plaintiff asserts that these actions violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

As relief, Plaintiff checked a box indicating he sought "injunctive relief"—read liberally, if not literally, to likely include receipt of his requested diabetic diet.  He also asked for monetary and punitive damages, and to have his "medical paid for [the] rest of my life."

## II. ANALYSIS

When a prisoner sues a governmental entity, officer, or employee, the trial court must review the complaint and, if the court determines that it is frivolous or malicious, dismiss the case for failing to state a claim upon which relief may be granted or for seeking monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1) and (2).  When determining whether a plaintiff has stated a claim upon which relief can be granted, a court must construe the complaint in a light most favorable to the plaintiff and accept all plausible, non-conclusory factual allegations as true.  *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).  While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), a complaint must include "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. Fourth and Fifth Amendment claims

Plaintiff alleges that he was locked in CPTU by Defendant Valentine "for investigation of gang activity after [a staff member] told [Plaintiff] he knew [Plaintiff] was not a gang member."  Plaintiff does not explain why this would violate the Fourth Amendment, however.

"The Fourth Amendment protects against unreasonable searches and seizures.  However, in the context of prisoner placement in segregation, the scope of that right is considered co-extensive with the protections afforded by the Due Process Clause[.]"  *Curtis v. Wheeler*, No. CV 0:18-096-HRW, 2019 WL 320564, at *3 (E.D. Ky. Jan. 24, 2019).  According to *Sandin v.*

3

*Conner*, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of his sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Courts generally consider the nature and duration of a stay in segregation in determining whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008).

Plaintiff does not allege that his time in CPTU was an "atypical and significant hardship" as set forth in *Sandin*. It is clear from the complaint that Plaintiff spent less than seven months in CPTU after his placement there on May 3, 2021, because he alleges that on November 5, he was "again" placed in CPTU. The length of time he spent in CPTU, therefore, does not suggest an "atypical and significant hardship." *See, e.g.*, *Dunbar v. Barone*, 487 F. App'x 721, 724-25 (3d Cir. 2012) (per curiam) (holding 18 months in segregation did not amount to atypical and significant hardship); *McMann v. Gundy*, 39 F. App'x 208, 210 (6th Cir. 2002) (holding that confinement in administrative segregation for five months' duration did not violate Due Process); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug. 11, 1999) (finding that neither eight months administrative segregation nor 14 days disciplinary segregation constituted an atypical and significant hardship on inmates).

Plaintiff also asserts this violated the Fifth Amendment, but again fails to explain how the Fifth Amendment applies to his claims. The facts as alleged by Plaintiff, read liberally by the Court, do not state a cognizable Fifth Amendment claim against Defendants. To the extent Plaintiff is attempting to rely on the Due Process Clause, that provision of the Fifth Amendment circumscribes the actions of only the federal government, not Plaintiff's state prison officials. *See, e.g.*, *Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Austin v. Jochem*, No. 4:20-CV-

00035-JHM, 2021 WL 5496863, at *3 (W.D. Ky. Nov. 23, 2021).  The Court, therefore, will dismiss the Fourth and Fifth Amendment claims.

### B. Official-capacity claims for monetary relief against Defendants Valentine and Crews

"[O]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  Plaintiff alleges that Defendants Valentine and Crews are state employees.  Claims brought against state employees in their official capacities are deemed claims against the Commonwealth of Kentucky.  *See Graham*, 473 U.S. at 166.  State officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Further, the Eleventh Amendment acts as a bar to claims for monetary damages against state employees or officers sued in their official capacities.  *Graham*, 473 U.S. at 169.  Therefore, Plaintiff's official-capacity claims against these Defendants for monetary damages must be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary relief from a defendant who is immune from such relief.

### C. First Amendment claims

Plaintiff alleges that on May 3 he was locked in CPTU by Defendant Valentine in retaliation "for investigation of gang activity."  Plaintiff also alleges that on November 5 he was again locked in CPTU by Defendant Valentine in retaliation for filing a lawsuit regarding his medical care.  He further asserts that Defendant Valentine retaliated against him by placing him on grievance restriction for filing grievances against Defendants Dilmaghani and Aramark.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he engaged in protected conduct, (2) a defendant took an adverse action against him that

would deter a person of ordinary firmness from engaging in that conduct, and (3) the protected conduct motivated the adverse action, at least in part. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Under the *Thaddeus-X* framework, courts generally treat the filing of a non-frivolous prison grievance or lawsuit as constitutionally protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

Here, Plaintiff's first alleged instance of retaliation does not arise from protected conduct. Plaintiff refers to an investigation of gang activity and a staff member's statement that he knew Plaintiff was not a gang member. Plaintiff does not allege what, if any, protected activity he engaged in. Thus, this retaliation claim fails to state a claim for which relief may be granted.

Plaintiff's third alleged instance of retaliation—that Defendant Valentine restricted him for filing grievances—also fails to state a claim. Plaintiff does not allege facts that would support the second element of a retaliation claim, *i.e.*, adverse action. The "Sixth Circuit has repeatedly held that placement on modified access [to filing grievances] does not constitute an adverse action for purposes of a retaliation claim." *Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 WL 2106401, at *5 (W.D. Mich. May 6, 2015). This is because the right to file institutional grievances without being subject to retaliation extends only to the filing of non-frivolous grievances and "an ordinary person of reasonable firmness would not be deterred from filing non-frivolous grievances merely because he or she had been placed on modified status." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005).

The Court will allow Plaintiff's second claim of retaliation to go forward: that on November 5 Defendant Valentine locked him in CPTU in retaliation for filing a lawsuit regarding his medical care. Filing a non-frivolous lawsuit related to Plaintiff's medical care is protected conduct, and the Court takes judicial notice that Plaintiff filed a lawsuit against

Wellpath/CCS in July 2021.  *Johnson v. Wellpath/CCS*, 3:21-cv-484-CHB.  That lawsuit remains pending, and Plaintiff has filed numerous documents in that case—including as late as November 5.  *See, e.g.*, *Herron v. Harrison*, 203 F.3d at 415 (holding that the First Amendment protects the right to file nonfrivolous grievances or lawsuits).  Further, a transfer to a more restrictive living environment with fewer privileges could deter a person of ordinary firmness from exercising the constitutional right to file grievances.  *See Thaddeus-X*, 175 F.3d at 396 ("In the prison context, an action comparable to transfer to administrative segregation would certainly be adverse[,]" because it could "deter a person of ordinary firmness from the exercise of [a constitutional] right….") (quotation marks omitted).  In light of the alleged timeline, Plaintiff has plausibly alleged that he engaged in protected conduct and suffered adverse action motivated, at least in part, by the protected conduct.  *See Hill v. Lappin*, 630 F.3d 468, 475-76 (6th Cir. 2010) (observing that "the temporal proximity between the prisoner's protected conduct and the official's adverse action" can provide circumstantial proof of official's retaliatory motive).

The Court dismisses Plaintiff's retaliation claims against Defendant Valentine regarding investigation of gang activity and placement on grievance restriction.  Both fail to state a claim upon which relief may be granted.  The Court allows the other retaliation claim regarding placement in CPTU to continue.

### D. Claims based on failure to follow DOC policies and procedures

Plaintiff alleges that Defendants failed to follow DOC policies and procedures.  The failure of prison officials to follow institutional policies or procedures, however, does not give rise to a constitutional claim.  *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004) ("[S]tate law, by itself, cannot be the basis for a federal constitutional violation."); *Smith v. Crews*, No. 5:21-CV-P35-TBR, 2021 WL 3621705, at *2 (W.D. Ky. Aug. 16, 2021) ("[A]n

alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation."). Therefore, Plaintiff's claims based on the alleged failure to follow DOC policies and procedures will be dismissed for failure to state a claim.

### E. Eighth Amendment claim related to diabetic diet

Upon review, the Court will allow Plaintiff's claim that he is not receiving the correct diabetic diet in deliberate indifference to his health and safety to continue against Defendant Aramark and against Defendants Dilmaghani and Doe in their individual and official capacities. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."). This Eighth Amendment standard can apply to employees of private government contractors who act under color of state law. *See, e.g.*, *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008). Like a municipality, a corporation may be Aramark is liable if its official policy or custom causes the alleged deprivation of federal rights. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). To demonstrate Aramark's liability, Plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). Here, Plaintiff appears to allege that Aramark has a policy of not providing a correct diabetic diet, *e.g.*, substituting white bread for wheat bread.

### III. CONCLUSION AND ORDER

The Court **DISMISSES** Plaintiff's claims for monetary relief against Defendants Valentine and Crews in their official capacity pursuant to 28 U.S.C. § 1915A(b)(1) and (2) for failure to state a claim upon which relief may be granted and for seeking monetary relief from Defendants who are immune from such relief.

The Court further **DISMISSES** Plaintiff's Fourth and Fifth Amendment claims, the individual-capacity claim against Defendant Valentine for retaliation related to the investigation of gang activity and restriction of Plaintiff's grievances, and the claims based on DOC's policies and procedures.  These allegations fail to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

The Court allows to continue Plaintiff's official-capacity claims against Defendants Valentine and Crews for injunctive relief in the form of a proper diabetic diet;[2] the individual-capacity retaliation claim against Defendant Valentine for placing Plaintiff in CPTU for filing a lawsuit; and Plaintiff's Eighth Amendment claims against Defendants Aramark, Dilmaghani, and Doe related to Plaintiff's diabetic diet.

The Court will enter a separate Service and Scheduling Order to govern the development of the remaining claims.  In allowing these claims to proceed past initial review, the Court passes no judgment on their ultimate merit.

Date: February 22, 2022

Benjamin Beaton, District Judge
United States District Court

cc:     Plaintiff, *pro se*
        Defendants
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
B213.009

---

[2] In reading Plaintiff's complaint liberally and in conjunction with his motion for a preliminary injunction and temporary restraining order (DN 17) concerning not receiving a diabetic diet, the Court infers that the injunctive relief Plaintiff seeks is receipt of a proper diabetic diet.