UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JEFFERY JOHNSON, Plaintiff,

v.   Civil Action No. 3:21-cv-P725-DJH

ARAMARK CORPORATION *et al.*, Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeffery Johnson, an inmate at the Kentucky State Reformatory (KSR), filed the instant *pro se* 42 U.S.C. § 1983 action.[1] Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed the following claims to continue:  Plaintiff's official-capacity claims against Defendants Warden Anna Valentine and Kentucky Department of Corrections Commissioner Cookie Crews for injunctive relief in the form of a proper diabetic diet; his retaliation claim against Defendant Valentine in her individual capacity for placing Plaintiff in the Correctional Psychiatric Treatment Unit (CPTU) for filing a lawsuit; and his Eighth Amendment claims against Defendants Aramark Corporation and Aramark employees Martha Dilmaghani and John Doe #1 related to Plaintiff's diabetic diet (Docket Nos. 28 and 30). Plaintiff has filed four motions for preliminary injunctive relief arguing that he is not receiving diabetic food items even though he has been prescribed a diabetic food diet (DNs 17, 38, 47, and 98).

**I.**

In the first motion for a preliminary injunction and temporary restraining order (TRO) (DN 17), Plaintiff asserts that on January 5, 2022, Defendants Dilmaghani and Aramark "started

---

[1] This case was originally assigned to the Hon. Judge Benjamin Beaton but was reassigned to the undersigned (DN 86).

refusing me my medical prescribed diabetic diet meals today is 1-29-22 and Im still being refused my medical prescribed diet." He states that Defendant Dilmaghani "has in fact done this 2 other times in 2021 once in May & June and again in Nov." He states that Defendant Dilmaghani is "acting with deliberate indifference to my serious medical needs as a diabetic what shes doing is cruel and unusual punishment." Plaintiff attaches no exhibits to his motion.

  Plaintiff filed a second motion for preliminary injunctive relief (DN 38) in which he states that on February 24, 2022, he "was forced to eat blueberry muffin covered in melted butter & jelly at lunch" and "was forced to eat pizza & spegettie covered in meat sause and at dinner was forced to eat a sandwitch with potato chips & cookies." He asserts that "none of this is part of the medical prescribed diabetic diet the Plaintiff is susposed to be fed." He maintains that he is "fed through a slot in the door and has no control over food he is givin all most everyday since 1-10-22. He states that Defendant Dilmaghani and Aramark are "intentionaly making Plaintiff sick and refusing Plaintiff his medical prescribed diabetic diet." Plaintiff again attaches no exhibits to his motion.

  Defendants Valentine and Crews filed a response (DN 40), arguing that Plaintiff has not shown a likelihood of success on the merits because he has not presented any evidence that he was subjected to a substantial risk of serious harm. They maintain that, while Plaintiff claims he was refused diabetic meals which made him "very sick and hypoglycemic," he "offers no medical evidence of his alleged medical issues or evidence that he suffered any serious harm or illness requiring medical treatment or hospitalization." They also maintain that the Plaintiff has shown no proof that the prison staff "was subjectively aware of the risk" of harm to him and that they "disregard[ed] that risk by failing to take reasonable measures to abate it," as required by *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Defendants Valentine and Crews point to

grievance records which they argue show that Defendant Dilmaghani investigated Plaintiff's complaints and "verified that diabetic meals and snacks were sent to the Plaintiff's housing unit every day." They also point to a grievance response which shows that "in previous instances [Defendant Dilmaghani] did take reasonable measures to abate the risk when she became aware that the Plaintiff's dorm was on lockdown. Said response further shows that this was, at most, an isolated incident."

Defendants Valentine and Crews also argue that Plaintiff cannot show that he is likely to suffer irreparable harm because "he is no longer housed in the KSR CPTU, where the serious risk of harm allegedly occurred. Claims for injunctive relief are generally mooted by the inmate being moved." They attach a bed assignment sheet showing that Plaintiff was moved out of CPTU to Dorm 7 on March 8, 2022. Citing a grievance response by Defendant Dilmaghani, they report that Plaintiff has been moved to a KSR dorm where he is "now permitted to personally go to the cafeteria, where there is a designated service line for diabetic inmates to receive special food trays, and get his meals." They maintain that "it is the Plaintiff's choice whether to pass through the appropriate service line to receive his diabetic meals." Defendants Valentine and Crews further argue that granting Plaintiff injunctive relief would cause substantial harm to others and would not be in the public interest.

Plaintiff filed a reply (DN 48), in which he maintains that he has been subjected to a substantial risk of harm at KSR which "made him so sick & hypoglycemic with signs of DKA[2] that he in fact lost 50 lb & has had to have very pain full injections in his feet as recintly as Feb 2021 . . . ." He maintains that a doctor told him that "proper diabetic diet and foot care is in

---

[2] The Court takes judicial notice that DKA is the abbreviation for diabetic ketoacidosis which is "a serious complication of diabetes that can be life-threatening." https://www.cdc.gov/diabetes/basics/diabetic-ketoacidosis.

fact essential to help with the pain & suffering the Plaintiff is going through . . . ." He states that Defendant Dilmaghani has admitted in her responses to his grievances that "she would not let it happen again but its still happening." Plaintiff asserts, "Today 3-18-22 where Ive been refused by medical prescribed 2200 cal diabetic diet all day today after being forced to eat a regular tray in the cafeteria." He also states that at lunch on March 17, 2022, he "was told they ran out of diabetic diet trays & poultry patties." He argues that Defendants know that he is "on a walker for diabetic foot pain that the Defendants are in fact making worse refusing Plaintiff his medical prescribed diabetic meal & improper diet yesterday at dinner . . . ."

Plaintiff further states that Defendant Dilmaghani "single handedly as Aramark's Lead Kitchen Supervisor & as a agent of DOC/KSR & State of Ky refused to send medicaly prescribed diabetic meals to Plaintiff in CPTU in May & June 2021" after multiple calls from a KSR lieutenant to the kitchen requesting the diabetic tray for him." He states, "In fact since being locked in [Restrictive Housing Unit (RHU)]/CPTU on Jan 5, 2022 Plaintiff on 3-17-22 during Intake to RHU had again lost over 20 more pounds while being sick & suffering." He argues that irreparable harm "has all ready occurred from the Defendants actions in the last 2 years at KSR before and presently while being denied" a diabetic diet. He reports that he has over the last two years gone from walking and wearing normal shoes to having pain that has caused him to use a walker. He states that the injunctive relief he seeks "will force Defendants to follow the diabetic dietary guidline that they are already susposed to be following but are not."

To his reply, Plaintiff attaches four grievance responses signed by Defendant Dilmaghani[3] on which Plaintiff made handwritten comments.

---

[3] They are the same grievance responses attached to Defendants Valentine's and Crews's response.

In addition, on the same date he filed his reply, Plaintiff filed a motion "for Seize & Desist Order" (DN 47), in which he requests an order to stop Defendants from "forcing" him to eat meals that are not a medically prescribed diabetic diet. He repeats many of the allegations made in his reply. He states, "On 3-17-22 Plaintiff went to cafeteria went through the diabetic diet line on camera and was told they ran out of poultry patties and had no diabetic trays" and was told that he would have to eat a regular tray. He reports that he was locked in segregation that afternoon and at dinner he "was fed a sack lunch as he has since beginning of January 2022. It contained 4 pieces of white bread potato chips & cookies." He also describes being "refused" a diabetic diet tray on March 18, 19, and 20, 2022. He further reports that on March 21, 2022, he was "forced to go hungry when Aramark worker & black officer told me that Martha did not send the diabetic diet trays that I would have to eat a regular tray. It contained again blueberry muffin soaked in butter & jelly." He again describes his weight loss due to being denied a diabetic diet and maintains that he is "on a walker now for the diabetic foot pain & have to take horrible, painfull injections in my feet . . . ."

Plaintiff further states, "And now Warden Valentine has taken my diabetic shoes and forcing me to walk with a walker bear foot on the concrete to cause more pain in retelation for this lawsuit. Diabetics are not susposed to be bearfoot anywhere." He asserts, "In fact to take a diabetics shoes is 'barbarous' and unconscionable and any reasonable person would know it will cause a diabetic severe pain."[4]

---

[4] If Plaintiff wishes to assert a claim in this case based on these allegations, he must file a motion to supplement the complaint.

Plaintiff attaches one exhibit to the motion, which is a document titled "Clinical Orders." It documents an "Encounter Date" on February 22, 2022, where Plaintiff received an injection in his feet. It states as follows:

> Plantar Fasciltis injection bilateral heel/feet: Patient signed or gave verbal approval for procedure and received injection in center bottom of left and right heel. . . . A mixture of 2 mL of 1% lidocaine and 1 mL of 40 mg/mL Depo-Medrol was injected using a 23 gauge 1 inch syringe. . . . Patient instructed to come to sick call if experiences in swelling or warmth of injection site. Patient advised anesthetic will last approximately 18 hours and steroid should take effect in approximately 24 hours. Patient to continue to perform stretching exercises, wear appropriate shoes with inserts, and avoid prolonged standing on concrete. Patient to avoid any running or pounding to bottom of foot for several weeks. Instructed to complete sick call if any complication experienced.

The document also lists ten other appointments which were scheduled after that date but describes no other medical treatment given.

Plaintiff filed a fourth motion for "seize & desist order & TRO prelinary injunction" (DN 98) stating that "Defendants and KSR/DOC officials continue to put my life at risk by refusing me my medical prescribed diabetic diet acting with deliberate indifference to my serious medical needs." He asserts that he is suffering "extreme phyical pain and sickness with symptoms of hypoglycemic & DKA and causing emotional distress & the wanton & unnecessary intentional inflection of phyical pain."[5]

## II.

Both a preliminary injunction and a TRO are extraordinary remedies "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir.

---

[5] While the fourth motion is not yet ripe, the Court will address it herein since it must be denied for the same reasons the other three motions will be denied.

2002). Accordingly, "[t]he granting or denial of a preliminary injunction is within the sound judicial discretion of the trial court." *Mason Cty. Med. Ass'n v. Knebel*, 563 F.2d 256, 260-61 (6th Cir. 1977). In determining whether to issue a preliminary injunction or temporary restraining order, the district court is required to consider four factors: (1) whether the movant is likely to prevail on the merits; (2) whether the movant would suffer an irreparable injury if the court does not grant preliminary injunctive relief; (3) whether a preliminary injunctive relief would cause substantial harm to others; and (4) whether preliminary injunctive relief would be in the public interest. *Abney v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir. 2006); *see also Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 400 (6th Cir. 2001)). These factors are not "rigid and unbending requirements," as there is no "fixed legal standard" in determining whether to issue an injunction. *In re: Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992); *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) ("These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.").

Plaintiff has failed to establish a likelihood of success on the merits because he does not provide the requisite proof. "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Plaintiff produces no medical evidence to any of his four motions or his reply to support his assertions that he has suffered any injury due to being denied a diabetic diet. The only medical record he provides is the "Clinical Orders" document attached to his third motion at DN 47. The record documents injections Plaintiff received in his feet on February 22, 2022, but it does not give any indication that the injections were administered to him because of his diet. It does not even indicate that they were

administered because of his diabetes. Without medical evidence to support his claims, the Court cannot find that Plaintiff is likely to succeed on the merits to warrant the extraordinary remedy of preliminary injunctive relief. *See Parker v. Adu-Tutu*, No. 10-2747-PHX-GMS, 2012 U.S. Dist. LEXIS 71649, at *11 (D. Ariz. May 22, 2012) (denying motion for preliminary injunction where the plaintiff produced "no medical evidence establishing [his] medical condition or the progression of his condition" or "medical evidence supporting that a low-purine vegan diet is appropriate treatment for chronic gout and that such a diet will likely alleviate [the plaintiff's] suffering").

To the extent Plaintiff relies on "Declarations" or other evidence he filed elsewhere in the record, the undersigned has instructed Plaintiff repeatedly in *Jeffery Johnson v. Anna Valentine et al.*, Civil Action No. 3:21-cv-P157-DJH, that he should not file an exhibit until it is used in the case, *i.e.*, in support of or in opposition to a motion. **Plaintiff must attach the document to a motion, response, or reply and explain in the motion, response, or reply how the document supports his argument**. It is not the Court's responsibility to comb through the voluminous documents that Plaintiff has produced in this case to determine which documents support his arguments. Therefore, the Court will not consider any documents Plaintiff filed that were not attached to Plaintiff's motions or reply.

However, even if Plaintiff had attached the "Declarations" concerning his diabetic meals to his motions, because Plaintiff did not sign them "under penalty of perjury," they do not carry the same weight as evidence. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). Plaintiff's own unsworn statements concerning his injuries cannot be considered as evidence in consideration of a motion for preliminary injunctive relief.

Plaintiff also refers to camera footage which he believes supports his claim, but the docket does not reflect that Plaintiff has produced any camera footage. His own conclusory statements concerning what camera footage would show are not sufficient to warrant preliminary injunctive relief.

For these reasons, Plaintiff has failed to show a likelihood of success on the merits.

As to the irreparable-harm determination, a plaintiff must show harm that is not remote or speculative, but is actual and imminent. *Abney v. Amgen, Inc.*, 443 F.3d at 552. The injury must be of such imminence that there is a clear and immediate need for relief in order to prevent harm. *See Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985). Once again, Plaintiff fails to offer evidence to support that he will suffer irreparable harm absent preliminary injunctive relief. He alleges that denial of a diabetic diet has caused him injury. However, he attaches no medical documentation to his motions as proof. Therefore, Plaintiff has failed to establish irreparable harm.

The third and fourth elements also weigh against granting preliminary injunctive relief. Taking decisions out of the hands of prison officials as Plaintiff requests could cause substantial harm in disrupting prison administration. Moreover, the Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest. *Lang v. Thompson*, No. 5:10-CV-379, 2010 WL 4962933, at *7 (E.D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context.").

For the foregoing reasons, the Court concludes that the balancing of factors weighs against granting a preliminary injunction/TRO in Plaintiff's favor.

**IT IS THEREFORE ORDERED** that Plaintiff's motions for preliminary injunctive relief (DNs 17, 38, 47, and 98) are **DENIED** without prejudice to Plaintiff filing a properly supported motion.

Date: September 6, 2022

David J. Hale, Judge
United States District Court

cc: Plaintiff, *pro se*
Counsel of record
4415.010