UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**JEFFERY JOHNSON**                                                                                           **PLAINTIFF**

**v.**                                                                    **CIVIL ACTION NO. 3:21-CV-P725-JHM**

**ARAMARK CORRECTIONAL**
**SERVICES, LLC** *et al.*                                                                              **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion for summary judgment filed by Defendants Aramark Correctional Services, LLC (hereinafter "Aramark"), and Martha Dilmaghani (hereinafter "Defendants"). (DN 158). Proceeding *pro se*, Plaintiff Jeffery Johnson filed a response to the motion (DN 170), and Defendants filed a reply. (DN 172). For the reasons that follow, the motion for summary judgment will be granted and all pending motions denied as moot.

**I.**

Plaintiff was housed at the Kentucky State Reformatory (KSR) at the time pertinent to the complaint and has since been transferred. In the verified complaint, Plaintiff alleged that while he was housed in Kentucky State Reformatory's (KSR) CPTU, which the Court presumed to be the Correctional Psychiatric Treatment Unit, Defendant Dilmaghani "refused" him his "diabetic diet medical meals making me very sick and hypoglycemic for months." (DN 1, PageID.5). He stated that he lost approximately fifty pounds "causing excessive risk to my health and safty." (*Id.*). Plaintiff further alleged that on September 10, 2021, Defendants Dilmaghani and Aramark "forced" him to "eat pancakes and syrup," which "can kill a diabetic." (*Id.*, PageID.5-6). Plaintiff also stated that on September 29, 2021, he was "forced" to eat gravy and biscuits. (*Id.*, PageID.6). He alleged that he was also "forced" to eat 56 pieces of white bread per week on his "medical diabetic diet tray"—although he asserted diabetics are only supposed to eat wheat bread. (*Id.*).

Among the attachments to the complaint was a statement from Defendant Dilmaghani that Aramark's approved diet calls for two slices of white bread with each meal. (DN 1-1, PageID.45). Plaintiff also alleged that he was again locked in the CPTU for ten days and that Defendants Dilmaghani and Aramark refused him his diabetic diet. (DN 1, PageID.7).

Upon initial review pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's Eighth Amendment claims under 42 U.S.C. § 1983 based on his allegations that he was not receiving the correct diabetic diet in deliberate indifference to his health and safety to continue against Defendant Aramark and against Defendants Dilmaghani, an Aramark kitchen supervisor, and John Doe #1, an Aramark dietician, in their individual and official capacities (DN 28).[1]

## II.

### A.

In their motion,[2] Defendants argue that Plaintiff has not established any evidence that they acted with the requisite deliberate indifference to Plaintiff's constitutional rights in allegedly depriving Plaintiff of an adequate diet. (DN 158, PageID.1050). They assert that "despite having ample time to take discovery, and being given additional time to do so, Plaintiff has failed to establish any evidence to support his conclusory allegations against the Defendants." (*Id.*, PageID.1051). They maintain, "Plaintiff has not presented any expert nutritionist or medical testimony who will opine that (1) the meals provided by Aramark were not in compliance with Plaintiff's 2200 calorie diabetic diet; and (2) the meals provided by Aramark caused Plaintiff to lose fifty pounds." (*Id.*, PageID.1054). Defendants continue, "Simply put, there has been no

---

[1] Upon initial review, the Court also allowed claims to continue against KSR Warden Anna Valentine and Kentucky Department of Corrections Commissioner Cookie Crews. However, the Court later granted Plaintiff's motion to voluntarily dismiss the claims against Defendants Valentine and Crews. (DN 123). Therefore, the only remaining Defendants to the action are Aramark, Dilmaghani, and John Doe #1.
[2] The Court will summarize the parties' arguments relevant to this decision.

2

evidence presented to support plaintiff's Complaint[]" and that his allegations are "conclusory at best." (*Id.*).

More specifically, Defendants further assert that Plaintiff has failed "to establish evidence that the food he received was sufficiently serious enough to harm him." (*Id.*, PageID.1056). They state, "Aramark adamantly denies that Plaintiff was forced to eat a meal . . . that was not in compliance with his 2200-calorie diabetic plan." (*Id.*, PageID.1057). Defendants argue that the meals Plaintiff received constituted a nutritionally adequate diet and did not present a danger to his health and well-being and that Plaintiff, therefore, cannot show that Defendants denied him the "'minimal civilized measure of life's necessities.'" (*Id.*).

Defendants attach the declaration of Monique Skowronski signed under penalty of perjury.[3] (*Id.*, PageID.1066-67). Skowronski states that she is a Registered Dietician Nutritionist and Licensed Dietetic Nutritionist. (*Id.*, PageID.1066). She states that she joined Aramark in 2016 and in January 2021 became the Central Region Nutrition and Operational Director. (*Id.*). She asserts that Aramark provides food services for inmates at KSR pursuant to a contract between Aramark and KSR. (*Id.*). She further states, "In my role as Central Region Nutrition and Operational Director, I am responsible for verifying the caloric and nutritional content of the meals served to inmates at the correctional facilities that Aramark services." (*Id.*). She states that she also monitors "the caloric and nutritional content of the meals served to detainees/inmates residing at [KSR]" and is "familiar with the menus that are served at [KSR]." (*Id.*, PageID.1067).

Skowronski maintains, "I am familiar with the recipes and ingredients that correspond to these menus. These menus were approved by [KSR]." (*Id.*). She states the following:

> All menus served at [KSR], including the diabetic/medical menus served to Plaintiff during the period relevant to the Complaint in which Plaintiff contends he

---

[3] The Sixth Circuit has held that an unsworn declaration given under penalty of perjury has the same legal effect as an affidavit and, thus, is admissible evidence. *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002).

3

> received an inadequate diet, met the guidelines set by the American Correctional Association and were in compliance with the current Dietary Reference in takes for males and females aged 19-50 as established by the Food and Nutrition Board of the Institute of Medicine, National Academy of Sciences.

(*Id.*). She states, "All menus served at [KSR], including the 2200-calorie diabetic diet that Plaintiff was served, included adequate levels of protein, vitamin A, vitamin C, and calcium." (*Id.*). She also asserts, "With regard to the protein content of the meals provided to the detainees/inmates of [KSR], such constituted acceptable level of dietary protein that did not present a danger to their health and well-being." (*Id.*). Finally, Skowronski states, "Aramark has no authority to determine which inmates receive what menu. The medical department at [KSR] communicates medical diet requests to Aramark and, only after receiving such request, can Aramark prepare a medically-approved special diet, including a 2200-calorie diabetic diet, for a qualifying inmate." (*Id.*).

Defendants continue, "In contrast, Plaintiff has not proffered any lay or expert testimony from dietician or medical personnel that Plaintiff is not provided with a nutritionally adequate diet or that the diet caused his alleged injury." (*Id.*, PageID.1057). Defendants asserts that the meals were nutritionally adequate and that Plaintiff's diet, therefore, did not deny him the minimal civilized measures of life's necessities. (*Id.*, PageID.1058).

Defendants further maintain that "even if Plaintiff received occasional servings of food that were inadequate or unsatisfactory in some way, that is still not an appropriate claim for relief." (*Id.*). They argue that "the few occasions" on which Plaintiff was allegedly served inadequate or unsatisfactory meals "would at most constitute mere acts of negligence and not a Constitutional violation." (*Id.*). They also assert, "Similarly, a claim by an inmate that Aramark failed to provide him or her with a meal on a few occasions does not rise to the level of a constitutional violation." (*Id.*, PageID.1059).

4

**B.**

In his response to the motion for summary judgment,[4] sworn under penalty of perjury, Plaintiff states that he "is providing a time line of constant denial of his medical prescribed 2200 cal diabetic diet through affadavids, declarations and daily logs." (DN 170, PageID.1270). He argues that while Defendants claim that Aramark does not have the authority to alter or modify the meal provided to inmates, "for months in CPTU seg my refused me the 2200 cal diabetic diet altering my diet & on multiple occasions in seg & on the yard." (*Id.*, PageID.1271). He states that his Exhibit 4 attached to his response shows that Defendant Dilmaghani "admits to dening all diabetics diabetic diets and forcing us to eat pancake & suryp which could kill ah diabetic or go hungry." (*Id.*).[5]

Plaintiff states, "Even when Defendant gave Plaintiff a diabetic diet tray it was inadequate for his medically prescribed diet needs. He was forced to eat 56 pieces of white bread ah week 8 a day on 2700 cal diabetic diet tray." (*Id.*, PageID.1275). He attaches to his response information produced by the American Diabetes Association which Plaintiff alleges states that "diabetics are to eat whole wheat flour (wheat bread)." (*Id.*). The American Diabetes Association information Plaintiff attaches is titled "What Can I Eat?" and includes a heading "Best Choices of Whole Grain Foods." (*Id.*, PageID.1414-17). The list includes whole wheat flour, whole oats, whole-grain corn, brown and wild rice, whole-grain rye, whole-grain barley, and quinoa. (*Id.*, PageID.1415). Plaintiff handwrites on the page, "Wheat bread." (*Id.*). He also attaches what appear to be internet search results regarding foods that diabetics should avoid. (*Id.*, PageID.1418-23). Plaintiff also

---

[4] Plaintiff also captioned his response as a motion in support of his pretrial memorandum & summary judgment motion, which was separately docketed as such. (DN 169). The response is lengthy and makes many repetitive arguments and legal conclusions. The Court will do its best to summarize the arguments relevant to the Court's ruling.
[5] Exhibit 4 contains approximately 35 pages of grievance records, which the Court has reviewed. The Court could not locate an admission by Defendant Dilmaghani as Plaintiff describes.

points to his "daily logs & declarations" where "on the medical prescribed 2200 cal diet tray Aramark Defendants were forcing Plaintiff to eat potatos, white rice, pasta." (*Id.*, PageID.1275).

Plaintiff states, "Defendants constantly keep [Plaintiff] sick hypaglcemic with symptoms of DKA with their de facto policy of inaction refusing & deining Plaintiff ah proper medical prescribed diabetic diet that was medically prescribed to him." (*Id.*, PageID.1276). He points to his declaration dated March 17, 2022, "where Plaintiff was deind his medical diabetic diet because they ran out and was forced to eat potato chips & cookies again." (*Id.*). He asserts, "The Defendant were reclassly endangering my life putting me in imminent danger excarbating my serious cronic diabetes and dening me my medically prescribed diabetic diet . . . ." (*Id.*, PageID.1277). He states, "Aramark emergancy special meals plan does not call for feeding diabetics potato chips & cookies, pancakes & suryp." (*Id.*).

Plaintiff also asserts, "After [Defendant Dilmaghani] refusing Plaintiff ah proper diet medically prescribed to him he was placed on ah medically prescribed disability device due to the excarbation of his diabetes by Aremark Defendants." (*Id.*, PageID.1280). He states that he was "put on walker/rollator for diabetic foot pain & painful foot injections." (*Id.*, PageID.1281). Plaintiff asserts, "See Johnson vs. Aramark Corp. 3:21-CV-725 Sept. 6, 2022 #6 Plaintiff medical records of very painful foot injections he was force to take due to Aramark Defendants excarbating his diabetes causing irreparable harm." (*Id.*).[6] Plaintiff also references approximately 130 pages of "PID#s" which the Court understands to be page identification numbers in the docket. (*Id.*, PageID.1287). He states, "Regaurding his injurys Johnson has produced hypoglycemic epesodes[,]" and he refers to three pages in the docket. However, he does not attach these pages to his response. (*Id.*). He also states, "Regarding incodents of hypoglycemic eposodes and

---

[6] A review of the docket sheet shows that there are no medical records contained in Docket Number 6 and that there is no docket entry dated September 6, 2022.

6

excarbation of his existing diabetic maladies[,]" and he refers to approximately twenty pages in the docket, which he also does not attach to the response. (*Id.*).

### C.

In their reply, Defendants states, "Plaintiff repeats the same, unsubstantiated allegation that permeates his serial filings . . . , *viz*, that the Aramark Defendants failed to provide him with his medically prescribed 2200 calorie diabetic meals during his incarceration at [KSR]" (DN 172, PageID.1430). They argue that Plaintiff "has failed to present a necessary opinion or testimony of an expert witness to support his claims." (*Id.*, PageID.1430-31). They maintain that "the sole proof submitted by the Plaintiff that any food served him at [KSR] was inappropriate for a diabetic is . . . a list of healthy foods for diabetics from the American Diabetes Association and a mishmash of information from the Internet." (*Id.*, PageID.1432). They argue that the information is unauthenticated hearsay that cannot be relied upon to defeat summary judgment. (*Id.*, PageID.1432-33). Defendants state, "[W]hether a particular food item is inappropriate for a diabetic, how much of an inappropriate food item is needed to cause damage to a diabetic, and what constitutes a 2200 diabetic meal are not within a layperson's ken but rather are issues that only an expert dietician can explain." (*Id.*, PageID.1433). They argue that Plaintiff has not presented expert opinion to support his allegations and that he is not excused from the requirement to produce expert testimony because he is a *pro se* litigant. (*Id.*).

### III.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

## IV.

The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment claim against prison officials based on their failure to protect the plaintiff from harm, a plaintiff must present evidence showing that the defendant's conduct amounted to "deliberate indifference" to a known risk of harm. *Id.* at 837; *see also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). "The Eighth Amendment protects prisoners only from that conduct which is 'repugnant to the conscience of mankind.'" *Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1094 (6th Cir. 2019) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010)). Only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. *Id.* (quoting Farmer, 511 U.S. at 834). Deliberate indifference is equivalent to criminal recklessness. *Farmer*, 511 U.S. at 839-40. The plaintiff "must demonstrate deliberateness tantamount to intent to punish." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

Deliberate indifference includes both objective and subjective elements. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). The objective element requires the harm to be "sufficiently serious." *Curry*, 249 F.3d at 506 (quoting *Farmer*, 511 U.S. at 834). Therefore, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. The subjective element focuses on whether prison officials know that inmates face a substantial risk of harm and "disregard[] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's health or safety before an Eighth Amendment violation will be found. *Id*. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

9

draw the inference." *Id*. at 837. It is not enough that the official "should" have perceived a significant risk but did not. *Id*.

**A.**

Defendants argue that Plaintiff has failed to meet the objective component of a deliberate indifference claim with respect to his allegations concerning the diabetic food tray he received. Defendants do not dispute that Plaintiff is a diabetic and was prescribed the diabetic food tray at KSR or that he received meals as he alleged in the complaint, including a diabetic food tray which contained foods such as white bread, potato chips, pasta, and cookies. However, they argue that Plaintiff has provided no evidence that the diabetic food tray provided to him was not nutritionally adequate or that it presented a danger to his health. Defendants produce the declaration of registered dietician Skowronski, who states that she is responsible for verifying the caloric and nutritional content of the meals served to inmates at correctional facilities that Aramark services and that she monitors and is familiar with the nutritional content of menus served to KSR inmates. Skowronski states that the menus served "met the guidelines set by the American Correctional Association and were in compliance with the current Dietary Reference in takes for males and females aged 19-50 as established by the Food and Nutrition Board of the Institute of Medicine, National Academy of Sciences." She further maintains that the diabetic food tray Plaintiff received provided approximately 2200 calories along with a nutritionally appropriate amount of protein and healthy amounts of vitamin A, vitamin C, calcium and iron.

In a similar case where an inmate alleged an Eighth Amendment claim based on the inadequacy of his diabetic diet meals, the District of South Carolina granted summary judgment where the defendants produced the affidavit of a food service administrator who averred that the inmate's diabetic diet menu "was developed by qualified [South Carolina Department of

10

Corrections] nutritionists in accordance with state and federal statutes; [South Carolina Department of Health and Environmental Control] regulations; and the 'Recommended Dietary Allowances' as defined by the National Academy of Sciences National Research Council." *Majid v. Richards*, No. 0:19-1793-MGL-PJG, 2020 U.S. Dist. LEXIS 194469, at *9 (D.S.C. Sept. 24, 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 194309 (D.S.C., Oct. 19, 2020). In response to the affidavit, the inmate cited requests to staff, grievances, and sick call requests and attached a declaration in which he stated that he was not receiving meals in compliance with the diabetic diet he was prescribed. *Id.* However, the court found that "'lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for.'" *Id.* at *10 (quoting *O'Connor v. Pierson*, 426 F.3d 187, 202 (2d Cir. 2005)). The court found that the plaintiff failed to refute the defendants' evidence that the diet he received was adequate and that the plaintiff "does not have a constitutional claim against the defendants merely because he disagrees with the prescribed diet he received." *Id.* at *11; s*ee also Moody v. Bell*, No. 1:08-cv-796, 2009 U.S. Dist. LEXIS 83123, at *7 (S.D. Ohio July 8, 2009), *report and recommendation adopted*, 2009 U.S. Dist. LEXIS 83476 (S.D. Ohio Sept. 11, 2009) (granting summary judgment and finding that the diabetic inmate's complaint concerning bread and cereal served as breakfast foods "constitutes nothing more than a difference of opinion between himself and prison officials over the best way to accommodate his medical needs" which does not state an Eighth Amendment claim); *McGee v. Monahan*, No. 06 C 3538, 2008 U.S. Dist. LEXIS 62291, at *23 (N.D. Ill. Aug. 14, 2008) (granting summary judgment where diabetic inmate "cited no authority whatsoever to support his contention that the food was unhealthy, nor any medical or professional report calling into question the quality of the meals provided").

The Court provided instruction to Plaintiff that in order to defeat summary judgment, he must demonstrate a genuine issue of material fact for trial; must support this assertion by citing to facts that can be presented in a form that would be admissible in evidence; and must support his facts with affidavits and/or other documents contradicting the material facts asserted by Defendants. (DN 161). The Court stated that, otherwise, it may accept Defendants' facts as true and grant judgment in their favor. (*Id.*).

Like the plaintiff in *Majid*, Plaintiff cites his own affidavits, "declarations," and "daily logs" listing the foods he received on any given day. However, he produces no admissible evidence to refute Defendants' evidence that the diabetic food tray provided to him was nutritionally adequate and did not pose a danger to Plaintiff's health. He essentially argues that, in his opinion, the diabetic food tray should not have contained certain items. A *pro se* litigant is not excused from the requirement of presenting expert testimony on issues requiring an expert at the summary judgment stage. *See, e.g., Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008). Plaintiff presents no expert evidence to support his conclusion that the diabetic food tray provided to him put him at substantial risk of serious harm. *See Arellano v. Jones*, No. 3:20-cv-228-RMB, 2023 U.S. Dist. LEXIS 112019, at *35-36 (S.D. Cal. June 28, 2023) (finding that the plaintiff was "not a medical expert[] and his unsupported lay opinion" was "insufficient as a matter of law to establish a genuine factual dispute"); *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment.") (citation omitted).

The only arguable evidence Plaintiff produces to refute the affidavit produced by Defendants, outside of his own opinion, is information presumably printed from the internet from

the American Diabetes Association titled "What Can I Eat?" which includes a heading "Best Choices of Whole Grain." (DN 170, PageID.1414-17). He also produces what appear to be internet search results regarding foods that diabetics should avoid. (*Id.*, PageID.1418-23). These attachments are unauthenticated hearsay that cannot be relied upon to defeat summary judgment because Plaintiff has not identified an expert witness who would or could establish these documents' reliability and relevance as evidence. *See, e.g.*, *Benton v. Louisville Metro Govt.*, No. 3:17-CV-587-BJB, 2021 U.S. Dist. LEXIS 192901, at *5-6 (W.D. Ky. Oct. 6, 2021) (excluding as unauthenticated hearsay *pro se* prisoner's internet printouts submitted in opposition to summary judgment); *Colwell v. Corizon Healthcare Inc.*, No. 11-CV-15586, 2014 U.S. Dist. LEXIS 165458, at *18 (E.D. Mich. Nov.26, 2014) (ruling that *pro se* plaintiff's attempt to "introduce multiple Wikipedia and Medscape articles as evidence" in opposition prison healthcare defendants' summary-judgment motion was inadmissible hearsay).

Even if they were admissible evidence, however, the American Diabetes Association information and internet search results educate the reader on the *healthiest* food choices for diabetics. The information produced by Plaintiff does not provide an opinion, expert or otherwise, on the nutritional adequacy of the diabetic food tray Plaintiff received at KSR. Undoubtedly, in an ideal situation, a person with diabetes should choose the healthiest foods available. However, in the prison setting, many different penological and financial interests must be considered, and Defendants have met their burden to show that the diabetic food tray was nutritionally adequate and therefore did not pose a substantial risk of serious harm to him. Therefore, the Court finds that Defendants have shown an absence of material fact regarding Plaintiff's claim based on the diabetic food tray received at KSR and that they are entitled to summary judgment.

**B.**

In addition to the inadequacy of the diabetic food tray Plaintiff was served at KSR, Plaintiff also alleges that there were occasions where he was served a regular, non-diabetic meal or served items that were not on the diabetic menu, such as pancakes and syrup. In support of this, Plaintiff largely refers to "declarations" and "daily logs," citing to page identification numbers in the docket in his response. He does not attach the documents to his response, but a review of the referenced pages in the docket shows that these documents were not signed "under penalty of perjury" and are, therefore, not admissible evidence to defeat summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

However, even if Plaintiff did produce admissible evidence that he was occasionally served these items, numerous courts have held that occasional servings of foods that are even unsanitary do not meet the objective standard required to state a constitutional violation. *See, e.g.*, *Balcar v. Smith*, No. 17-5159, 2017 U.S. App. LEXIS 16462, at *4 (6th Cir. July 17, 2017) ("Isolated exposure to foreign bodies in food, including those of rodents and insects, does not constitute an Eighth Amendment violation."); *Kinner v. Moore*, No. 15-2105-JDT, 2016 U.S. Dist. LEXIS 47657, at *7, 26-27 (W.D. Tenn. Apr. 8, 2016) (finding that inmate's allegations that "trays are dirty, food products are expired and outdated, meats and other food products are raw or undercooked, the food is cold and inedible, and the portions are inadequate" did not meet the objective standard for an Eighth Amendment claim); *Lewis v. Taylor*, No. 3:16cv63/RV/EMT, 2016 U.S. Dist. LEXIS 128360 (N.D. Fla. Aug. 9, 2016) (allegations of service of substandard and spoiled food while in segregation fail to meet objective component of an Eighth Amendment claim); *Bennett v. Misner*, No. 02-1662-HA, 2004 U.S. Dist. LEXIS 19568, at *63 (D. Or. Sept. 17, 2004) ("Neither isolated instances of food poisoning, temporary lapses in sanitary food service,

nor service of meals contaminated with maggots are sufficiently serious to constitute an Eighth Amendment violation.").

Plaintiff also alleges that he was at times forced to go without eating a meal or part of a meal because of the food items he was served. However, an isolated or accidental failure to serve a meal does not amount to the deprivation of life's necessities as measured by contemporary standards of decency to satisfy the objective component of a deliberate indifference claim. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days does not state an Eighth Amendment violation) (citing *Cunningham v. Jones*, 667 F.2d 565, 565 (6th Cir. 1982); *Jones v. Carberry*, No. 2:08-cv-2682010 U.S. Dist. LEXIS 27802, at *16-17 (W.D. Mich. Mar. 24, 2010) (withholding of five meals during three day period "does not result in a health risk to the prisoner sufficient to qualify as a 'wanton infliction of pain'").

Accordingly, the Court finds that Defendants have established an absence of a genuine issue of material facts with respect to the objective component of a deliberate indifference claim with respect to Plaintiff's allegations that he was occasionally served menu items that were not on the diabetic food tray at KSR.

**C.**

Furthermore, Plaintiff produces no medical records showing that the diet he was receiving, and not the myriad of other factors that may affect a diabetic inmate's health, caused the side effects he complained of. Where a prisoner's deliberate indifference claim is based on a condition where the cause is non-obvious, medical proof is required to assess whether the treatment caused a serious medical injury. *See King v. Alexander*, 574 F. App'x 603, 605 (6th Cir. 2014) (holding that an inmate's "failure to provide medical expert testimony to establish a causal link between her injury and the allegedly inadequate treatment . . . dooms her deliberate-indifference claim") (citing

*Santiago v. Ringle*, 734 F.3d 585 (6th Cir. 2013); *Malone v. Conley*, No. 1:17-cv-413, 2020 U.S. Dist. LEXIS 13346, at *16 (S.D. Ohio Jan. 27, 2020) (finding no genuine issue of material fact where the plaintiff produced "no verifying medical evidence establishing the necessary causation between the alleged lack of treatment on certain days and plaintiff's subsequent hospitalization"). Here, Plaintiff alleges in the complaint that he was "very sick and hypoglycemic for months." He states in his verified response to the motion that he was "sick hypaglcemic with symptoms of DKA[,]" which the Court construes as diabetic ketoacidosis, and that he had to be placed on a walker and given foot injections. However, he presents no medical evidence as proof that these conditions were caused by the foods he was receiving or to even show the date that he received the alleged treatments. He cites to his unsworn "declarations" and "daily logs" and makes a reference to medical records in his response. However, the Court reviewed Plaintiff's hundreds of pages of filings in the docket of the action and was not able to locate any medical records to support his claims. In addition, Plaintiff offers no medical evidence to support his serious allegation in the complaint that his diet caused him to lose fifty pounds.

The Court finds that Defendants have established an absence of a genuine issue of material fact with respect to the objective component of a deliberate indifference claim for these reasons, as well, and that Defendants are entitled to judgement as a matter of law.

**D.**

Plaintiff did not move to amend the complaint to identify John Doe #1, the Aramark dietician, and the instant motion for summary judgment was not filed on his behalf. However, because the Court has found that Defendants Aramark and Dilmaghani are entitled to summary judgment based on Plaintiff's failure to establish evidence on the objective component of a

deliberate indifference claim, the Court finds that the analysis applies equally to John Doe #1, and summary judgment will be entered as to Plaintiff's claim against John Doe #1, as well.

V.

For the reasons stated above, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 158) is **GRANTED**.

The Court will enter a separate Judgment dismissing this action for the reasons stated herein and denying the pending motions as moot.[7]

Date:   January 25, 2024

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4414.010

---

[7] The Court has reviewed Plaintiff's pending motions, including his motion for summary judgment (DN 150), and finds that nothing in the motions negates the Court's conclusions herein.